Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| ALEXANDER MONGE ADORNO; IVIA CRUZ HERNÁNDEZ Y OTROS<br><br>Apelante<br><br>V.<br><br>COOPERATIVA DE VIVIENDA CIUDAD UNIVERSITARIA; IVÁN A. OTERO LÓPEZ Y OTROS<br><br>Apelada | KLAN202300352 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Caso Núm. FECI2016-00855 (409)<br><br>Sobre: DAÑOS Y PERJUICIOS; INCUMPLIMIENTO DE DEBER FIDUCIARIO; ABUSO DE FACULTADES; NEGLIGENCIA CRASA; DOLO; MALA FE; DISCRIMEN POR IMPEDIMENTOS Y OTROS |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2023.

El señor Alexander Monge Adorno y otros (apelantes) han presentado un recurso apelativo ante este Tribunal. Solicitan que revoquemos la *Sentencia* en la que el Tribunal de Primera Instancia (TPI) desestimó con perjuicio la demanda instada contra la Cooperativa de Vivienda Ciudad Universitaria y otros (apelados), debido a que la mayoría de las causas de acción estaban prescritas, no agotaron remedios administrativos y no lograron probar los daños.

**I**

Según surge del expediente, el 24 de junio de 2016, el Sr. Alexander Monge, su esposa, la Sra. Ivia Cruz, y sus hijos, Alexander Monge Cruz, Alexandra Monge Cruz y Gabriela Monge Cruz presentaron una *Demanda* por daños y perjuicios, incumplimiento del

deber fiduciario, abuso de facultades, negligencia crasa, dolo, mala fe y discrimen por impedimento contra la Cooperativa de Vivienda Ciudad Universitaria, el Sr. Iván Otero, la Sra. Carmen Muñoz, la Sra. Carmen Rosado, la Sra. Renata López, la Sra. Edna González, la Sra. Nelly Díaz y el Sr. Alejandro Torres.[1]

Las reclamaciones expuestas en la demanda surgen a raíz de unos alegados hechos ocurridos desde el año 2008, cuando los apelantes presentaron una querella ante la Administradora de la Cooperativa, la Sra. Carmen Nelly Díaz (Sra. Díaz), por ruidos excesivos provenientes de otro apartamento, sin embargo, señalaron que no recibieron la atención necesaria.

Luego de otros incidentes, la Junta de Directores de la Cooperativa inició un procedimiento por la alegada conducta indebida del Sr. Monge. No obstante, los apelantes señalaron que la Junta de Directores incumplió con varios requisitos establecidos en la Ley de Cooperativas de Vivienda y el Reglamento, entre ellos, falta de notificación. Consecuentemente, el 15 de octubre de 2013, los apelantes presentaron una querella (Q13-239-398-13) ante la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC) contra los apelados. Entre lo solicitado se encontraba que ordenaran a la Junta de Directores a proveer un acomodo razonable al Sr. Adorno, debido a su condición de salud mental; ordenaran una investigación contra la Administradora de la Cooperativa y celebraran una vista conciliatoria, entre otras. No obstante, COSSEC denegó la querella por encontrarse sin jurisdicción sobre la materia, ya que la Cooperativa estaba atendiendo las querellas presentadas contra ellos.

A su vez, manifestaron que, a pesar de los reclamos a la Administradora y a la Junta de Directores, fueron víctimas de actos

---

[1] Índice del apéndice, págs. 1-33.

de persecución, hostigamiento, actos de vandalismo, entre otros. Sostienen se debió como consecuencia de las actuaciones ilegales e incumplimientos con el Reglamento por parte de los apelados, incumpliendo su deber de protegerlos como socios.

Por su parte, los apelados, de manera individual, contestaron la demanda aceptando algunos hechos y negando otros.[2] A su vez, presentaron varias defensas afirmativas, entre ellas: prescripción, falta de jurisdicción, cosa juzgada o impedimento colateral por sentencia, falta de parte indispensable y negligencia comparada. Por su parte, el Sr. Alejandro Torres especificó que no se sometía a la jurisdicción, por no haber sido emplazado personalmente. Además, expresó que el matrimonio con la Sra. Carmen Nelly Díaz estaba sujeto al régimen de capitulaciones matrimoniales, por lo que no existía una sociedad legal de gananciales.

Luego de varios incidentes procesales, el 7 de marzo de 2022, el Sr. Alejandro Torres presentó una moción de desestimación.[3] En esta alegó que, él y su esposa se casaron por capitulaciones, por lo que no existe sociedad legal entre ambos; a su vez, que el emplazador había señalado que le había entregado personalmente el emplazamiento, no obstante, sostuvo que es falso, y, por lo tanto, no se obtuvo jurisdicción sobre su persona. De igual forma, señaló que los alegados hechos en su contra se remontan al año 2013 o previos a marzo de 2015, por lo que al haber transcurrido más de 1 año sin haberse interrumpido de manera extrajudicial, verbal o por escrito, la causa de acción había prescrito.

El 29 de marzo de 2022, la Sra. Carmen Díaz presentó *Moción de Desestimación por Prescripción.*[4] En síntesis, adujo que las acciones presentadas en su contra fueron por alegados actos u omisiones en

---

[2] *Íd.*, págs. 34-77.
[3] *Íd.*, págs. 96-111.
[4] *Íd.*, págs. 78-95.

su desempeño como Administradora de la Cooperativa, y para junio de 2014, había terminado sus funciones. Por consiguiente, al momento de presentarse la demanda y habiendo transcurrido el término para presentar las causas de acción en su contra, éstas estaban prescritas. A su vez, señaló que los apelantes no contestaron en el término correspondiente la moción presentada, por lo que, posteriormente, presentó *Moción Solicitado Quede Sometida sin Oposición y se Adjudique en sus Méritos la Moción para Desestimar por Prescripción.*

De otra parte, el Sr. Iván Otero, la Sra. Carmen Muñoz, la Sra. Carmen Rosado, la Sra. Renata López, la Sra. Edna González y la Sra. Wanda Rosario, presentaron una *Solicitud de Sentencia Sumaria.*[5] Expusieron que la Cooperativa, según la Ley 239-2004, es quien ostenta personalidad jurídica mas no así la Junta de Directores y que la responsabilidad fiduciaria de sus miembros es ante la Cooperativa, y no ante cada uno de sus socios, por lo que, sostienen que no procedía una causa de acción en contra de estos en su carácter oficial. A su vez, expusieron como alegación responsiva cosa juzgada y falta de parte indispensable.

En cuanto a la causa de acción por discrimen al haber ignorado la solicitud de acomodo razonable, sostuvieron que la Cooperativa le ofreció una alternativa, pero la Sra. Cruz se negó. A su vez, sostuvieron que sí evaluaron la solicitud, ésta fue denegada y no volvieron a recibir otra solicitud.

Así las cosas, el 18 de agosto de 2022, los apelantes presentaron su oposición a la moción presentada por el Sr. Alejandro Torres.[6] Sostuvieron que el emplazador le entregó el emplazamiento del Sr. Alejandro Torres, a su esposa, la Sra. Carmen Nelly Díaz, quien le había manifestado que estaba autorizada a recibirlo.

---

[5] *Íd.*, págs. 112-176.
[6] *Íd.*, págs. 177-182.

Finalmente, arguyeron que la causa de acción en su contra no estaba prescrita, puesto que, los ruidos excesivos han continuado.

Luego de evaluadas las posiciones de las partes, el TPI dictó *Sentencia* y determinó que los siguientes hechos no están en controversia:[7]

1. Los Demandantes Alexander Monge Adorno (Monge Adorno) e Ivia Cruz Hernández (Cruz Hernández) son un matrimonio y componen la Sociedad Legal de Gananciales Monge-Cruz.

2. Los demandantes Alexander Monge Cruz (AMC), Alexandra M. Monge Cruz (AMMC) y Gabriela A. Monge Cruz (GMC) son hijos de los demandantes Monge Adorno y Cruz Hernández.

3. La dirección física de los Demandantes es: Cooperativa de Vivienda Ciudad Universitaria, Apartamento 807-B, Trujillo Alto, P.R. Su dirección postal es: 2 Ave. Periferial, Cooperativa Ciudad Universitaria, Apt. 807-B, Trujillo Alto, Puerto Rico, 00976.

4. La demandada Cooperativa de Vivienda Ciudad Universitaria (la "Cooperativa"), es una cooperativa de vivienda creada al amparo de las leyes del Estado Libre Asociado de Puerto Rico, cuya dirección física es 2 Ave. Periferial, Suite Adm., Trujillo Alto, P.R., cuya dirección postal es 2 Ave. Periferial, Suite Adm., Trujillo Alto, P.R., 00976-2130.

5. El Demandado, Iván A. Otero López (Otero), es Socio de la Cooperativa y residente del complejo de vivienda Ciudad Universitaria.

6. La Demandada, Carmen Muñoz Hernández (Muñoz), es Socia de la Cooperativa y residente del complejo de viviendas Ciudad Universitaria.

7. La Demandada, Carmen Rosado de León (Rosado), es Socia de la Cooperativa y residente del complejo de viviendas Ciudad Universitaria.

8. La Demandada, Renata López Colón (López), es Socia de la Cooperativa y residente del complejo de viviendas Ciudad Universitaria.

9. La Demandada, Edna I. González (González), es Socia de la Cooperativa y residente del complejo de viviendas Ciudad Universitaria.

10. La Demandada, Wanda Rosario (Rosario), es Socia de la Cooperativa y residente del complejo de viviendas Ciudad Universitaria.

---

[7] *Íd.*, págs. 183-208. Los hechos no controvertidos, fueron estipulados por las partes en el *Informe Preliminar de Conferencia con Antelación al Juicio.*

11. La Demandada, Nelly Díaz Adorno (Díaz), es residente del complejo de viviendas Ciudad Universitaria.

12. El Demandado, Alejandro Torres Rivera (Torres-Rivera), es Socio y residente de la Cooperativa, y esposo de la Demandada Díaz.

13. "La Cooperativa de Viviendas Ciudad Universitaria es una cooperativa de viviendas que se organizó y se rige por la Ley Núm. 239 de 1 de septiembre de 2004 y está localizada en Trujillo Alto. Además, se rige por el Reglamento interno de la Cooperativa, así como por la jurisprudencia aplicable a las cooperativas de Puerto Rico."

14. Las facultades y deberes del Principal Ejecutivo o Agente Administrador de la Cooperativa son los que surgen de la Ley 239-2004, del Reglamento interno de la Cooperativa y del Contrato de Administración correspondiente.

15. El 15 de octubre de 2013, los demandantes presentaron una querella ante la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC), Querella (Q13-239-398-13) contra la Cooperativa de Vivienda, contra su Junta de Directores y contra la Administradora Díaz.

16. El 3 de junio de 2013 el Codemandado ATR le escribió a la socia Ivia Cruz.

17. El 20 de junio de 2013 la socia demandante Ivia Cruz le escribió carta a ATR rechazando que los ruidos provinieran de su unidad de vivienda, solicitando se verificara los ruidos generados desde dos pisos superiores a la unidad de vivienda de ATR en el 907-B.

18. El 3 de julio de 2013 ATR contestó la carta de la Codemandante Ivia Cruz reafirmando su queja por los ruidos, golpes y palabras soeces provenientes de su unidad de vivienda 807-B.

19. La condición de socio de la unidad de vivienda 707-B la ostenta el Codemandado Alejandro Torres Rivera.

20. Nelly Díaz Adorno, comenzó a trabajar con la CVCU, el 3 de septiembre de 1996, mediante un contrato de servicios profesionales.

21. Nelly Díaz Adorno, terminó sus funciones como Administradora, por contrato de servicios profesionales con CVCU, el 3 de mayo de 2014.

22. El 10 de octubre de 2013, la demandante presentó una Queja de Discriminación en la Vivienda, ante la *U.S. Department of Housing and Urban Development*.

23. El 21 de febrero del 2014, la HUD, determinó: "Después de revisar los documentos presentados a esta oficina, hemos determinado que no cualifica como una persona ofendida y por lo tanto le informamos que no

tenemos ninguna jurisdicción en la pregunta que nos hizo."

24. Nelly Díaz Adorno, comenzó a trabajar con la CVCU, el 3 de septiembre de 1996, mediante un contrato de servicios profesionales.

25. Nelly Díaz Adorno, terminó sus funciones como Administradora, por contrato de servicios profesionales con CVCU, el 31 de mayo de 2014.

26. Del 12 de febrero de 2006 al 2 de febrero de 2006 el demandante Monge Adorno estuvo internado en el Hospital San Juan Capestrano con síntomas de ansiedad, minusvalía, insomnio, aislado, pobre autoestima, agresividad, irritabilidad, llanto frecuente, pobre control de impulsos, falta de concentración y anhedonia.[8]

27. El demandante fue referido al Hospital San Juan Capestrano por presentar trastornos de estrés post traumático.

28. Del expediente médico del demandante en el Hospital Capestrano surge que éste tiene historial psiquiátrico y psicológico desde un incidente con unos guardias de seguridad en el año 2003.

29. El 17 de febrero de 2006, fue evaluado por psiquiatra en el Hospital San Juan Capestrano quien diagnosticó depresión mayor severa recurrente con rasgos psicóticos y recomendación de admisión a hospitalización parcial. Fue evaluado presentando agresividad contra el juez que lleva su caso y depresión.

30. Del 23 de febrero de 2006 al 3 de marzo de 2006 estuvo hospitalizado de forma parcial en el Hospital San Juan Capestrano para recibir atención médica por depresión mayor severa con rasgos psicóticos.

31. Durante dicho tiempo presentó un patrón de comportamiento egocéntrico, grandioso y sin empatía por los demás. Durante dicha hospitalización el 2 de marzo de 2006 el demandante se dirigió al baño y al ver que estaba ocupado el de caballeros comenzó a darle golpes a la puerta; la persona que estaba en el baño el psiquiatra Dr. Cardona quien le llamó la atención. Luego de dicho incidente el demandante solicitó ser dado de alta, a pesar de las recomendaciones de continuidad de tratamiento. Se le recomendó luego del alta continuar los medicamentos y seguimiento médico y psiquiátrico.

32. La Cooperativa de Vivienda Ciudad Universitaria (Cooperativa) es una cooperativa de vivienda mancomunada que se rige por la Ley 239-2004 y su jurisprudencia interpretativa.

---

[8] Entendemos que la inconsistencia en las fechas citadas en el hecho #26 de la *Sentencia* que es como aparecen en el *Informe Preliminar de Conferencia con Antelación al Juicio* del 9 de mayo de 2022, corresponde a un error de forma.

33. La Cooperativa es una cooperativa de vivienda debidamente inscrita ante COSSEC y registrada ante el Departamento de Estado de Puerto Rico.

34. La Cooperativa tiene un Reglamento interno aprobado en Asamblea Extraordinaria del 20 de mayo de 2006 y debidamente aprobado por la Oficina del Inspector de Cooperativas [ahora COSSEC].

35. El codemandado Iván Otero ha sido miembro de la junta de Directores de la Cooperativa.

36. El codemandado Iván Otero no está casado ni ha tenido una sociedad legal de gananciales.

37. La codemandada Carmen Muñoz ha sido miembro de la Junta de Directores de la Cooperativa.

38. La codemandada Carmen Muñoz no estaba casada ni tenía una sociedad legal de gananciales para las fechas de los hechos alegados en la demanda.

39. La codemandada Carmen Rosado ha sido miembro de la Junta de Directores de la Cooperativa.

40. La codemandada Carmen Rosado no estaba casada ni tenía una sociedad legal de gananciales para las fechas de los hechos alegados en la demanda.

41. La codemandada Renata López ha sido miembro de la Junta de Directores de la Cooperativa.

42. La codemandada Renata López no estaba casada ni tenía una sociedad legal de gananciales para las fechas de los hechos alegados en la demanda.

43. La codemandada Wanda Rosario ha sido miembro de la Junta de Directores de la Cooperativa.

44. La codemandada Wanda Rosario no estaba casada ni tenía una sociedad legal de gananciales para las fechas de los hechos alegados en la demanda.

45. La codemandada Edna González no fue miembro de la Junta de Directores para ninguna de las fechas correspondientes a los hechos pertinentes alegados en la Demanda.

46. La codemandada Edna González no está casada ni tenía una sociedad legal de gananciales.

47. La demandante Ivia Cruz Hernández es socia de la Cooperativa y reside en la Cooperativa junto a su esposo, Alexander Monge Adorno, y los hijos de ambos, Alexander Monge Cruz y Gabriela Monge Cruz, quienes son parte de la composición familiar de la socia en la Cooperativa y parte demandante en el caso.

48. El Reglamento de la Cooperativa, en su Art. VII(k), define "socio" como "la persona natural que haya sido

admitida como tal por la Junta de Directores para formar parte de la Cooperativa y ocupar una unidad de vivienda junto a su composición familiar, si alguna".

49. El Reglamento de la Cooperativa, en su Art. VII(k), define "composición familiar" como "los miembros de la familia que residan en una unidad de vivienda y que hayan sido informados a la Cooperativa por el socio utilizando el formulario provisto para ello y proveyendo la totalidad de los documentos requeridos por la Cooperativa y que hayan sido registrados como residentes de la Cooperativa mediante un proceso de certificación o recertificación y que, por lo tanto, figuren en los formularios oficiales de la Cooperativa".

50. El Reglamento de la Cooperativa, en su Art. VII(k), define "mora o morosidad" como "el incumplimiento o el cumplimiento tardío de las responsabilidades de tipo económico del socio. [...] Cuando un socio incurra en mora, la Cooperativa, a través de la Oficina de Administración o la Junta de Directores, hará las gestiones de cobro que permitan la Ley 239, este Reglamento y las leyes del Estado Libre Asociado de Puerto Rico e impondrá las sanciones y penalidades establecidas en la Ley y este Reglamento para tales casos."

51. El Reglamento de la Cooperativa, en su Art. VII(o), define "conducta indebida" como "cualquier violación de un socio por sí o a través de algún miembro de su composición familiar o visitante, a este Reglamento, a la Ley 239 del 1 de septiembre de 2004, al contrato de ocupación, a los acuerdos y Resoluciones de la Junta de Directores o la Asamblea, o cualquier reglamento o norma de HUD que aplique a la Cooperativa. El socio responderá por acciones de conducta indebida incurridas por él, así como por cualquier integrante de su composición familiar o visitante. Cualquier acción de conducta indebida podrá conllevar sanciones de parte de la Oficina de Administración o la Junta de Directores, según dispuesto en este Reglamento y en la Ley."

52. La conducta indebida está regulada en el Reglamento de la Cooperativa, Art. XVI, Sec. 1, así como en los Arts. 35.4-35.8 de la Ley 239.

53. La Junta de Directores de la Cooperativa tiene, por virtud la Ley 239-2004 y del Reglamento interno de la Cooperativa, Art. XVI, Sec. 2, la facultad de llevar a cabo un procedimiento adjudicativo para atender los casos de socios que incurran en conducta indebida y/o morosidad.

54. El 24 de octubre de 2011, la Junta de Directores de la Cooperativa emitió una Resolución mediante la que encontró a la Sra. Ivia Cruz incursa en conducta indebida, tras determinarse que su esposo y miembro de su composición familiar en la Cooperativa, Sr. Alexander Monge Adorno, había incurrido en actos de conducta indebida.

55. En la mencionada Resolución se impuso a la Sra. Ivia Cruz Hernández, una sanción de tres (3) años de probatoria, vencedero el 24 de octubre de 2014.

56. De presentarse y probarse cargos por conducta indebida de cualquier naturaleza contra la Sra. Ivia Cruz Hernández dentro de dicho periodo probatorio, se procedería con su separación como socia de la Cooperativa.

57. La Sra. Ivia Cruz Hernández recurrió de la Resolución del 24 de octubre de 2011 de la Junta de Directores ante el Tribunal de Primera Instancia de Carolina, Caso Civil Núm. FAC2011-3221.

58. El Tribunal de Primera Instancia dictó Sentencia sumariamente el 24 de agosto de 2012, notificada y archivada en autos el 29 de agosto de 2012.

59. En la Sentencia, el Tribunal de Primera Instancia concluyó que:

De la totalidad de la prueba evaluada por la Junta de Directores surge que dicha condición de salud [del Sr. Alexander Monge Adorno] nunca fue comunicada a la Junta de Directores, ni al personal administrativo de la Cooperativa previo a los hechos que nos ocupan. La señora Cruz no presentó en ningún momento prueba documental o científica sobre la alegada condición de su esposo, el señor Monge.

Este Tribunal considera que carece de pertinencia la alegada condición de salud del señor Monge, debido a que no se ha presentado evidencia alguna, que sugiera que dicha enfermedad de alguna manera justifique la conducta indebida por la cual fue sancionada la demandante. De igual forma, no es pertinente para fines de la resolución del presente caso, la alegación de que los empleados de la Cooperativa no hayan sido adiestrados para atender pacientes de una condición emocional. De la prueba presentada, no surge que los empleados se hayan apartado de una conducta prudente y razonable.

La señora Cruz alega que todo el procedimiento disciplinario llevado en su contra es motivado por un deseo de la "Cooperativa" de confiscar la equidad de su apartamento. Revisado el expediente del caso, surge que la señora Cruz no presentó ninguna evidencia que apoye sus alegaciones al respecto. S[í] pudimos constatar, que existen declaraciones de la señora Cruz, durante la vista en la Cooperativa, en las que ésta admite que la Junta de Directores, siempre realizó arreglos para que pudiera ponerse al día en el pago de sus mensualidades hoy y no perdiera su apartamento. Por lo tanto, no nos convence a la alegación de la señora Cruz, sobre un esquema ilegal para separarla permanentemente de la Cooperativa.

60. La Sentencia en el Caso Civil Núm. FAC2011-3221 y, por lo tanto, la Resolución del 24 de octubre de 2011 que fue confirmada por virtud de ella, es final y firme,

habiendo transcurrido el término para recurrir de la mencionada Sentencia.

61. El 18 de noviembre de 2011 la Administración emitió un aviso a la comunidad sobre incidentes de vandalismo ocurridos en el piso 8, en el que se encuentra la unidad de vivienda de los demandantes.

62. El 5 de diciembre de 2011 la Administración dirigió una carta a la Sra. Cruz relacionada a un incidente de vandalismo en el que se había derramado pintura de aceite en la puerta de la unidad de vivienda de los demandantes. Se informó que se había cambiado la puerta y se había intensificado la seguridad en el piso 8 para evitar futuros incidentes como ese.

63. El 23 de febrero de 2011 la Administración dirigió una carta a la Sra. Cruz relacionada al incidente de vandalismo reportado por la Sra. Cruz el 4 de diciembre de 2011, así como informando que habían ocurrido otros incidentes de vandalismo en ese piso y que no se habían podido identificar a las personas que habían realizado dichos actos.

64. La Sra. Ivia Cruz presentó una querella en la Cooperativa sobre hechos ocurridos el 28 de marzo de 2012. En la querella alegó que el Sr. Manuel Freyre, hijo de la socia Marisol Morales, se había personado esa tarde en la puerta del apartamento de los demandantes, vociferando y golpeando fuertemente la puerta del apartamento. Durante el incidente se encontraban en el apartamento solo la Sra. Ivia Cruz y sus 3 hijos.

65. La puerta del apartamento sufrió daños por el incidente y la Sra. Cruz pagó $51.70 por la puerta y $100.00 por la instalación.

66. En atención a su querella, la Junta de Directores celebró una vista administrativa contra la socia Marisol Morales el 3 de abril de 2013. Como resultado, la Junta de Directores emitió una Resolución el 30 de abril de 2013 mediante la que le impuso a la socia Marisol Morales una multa de $500.00 para compensar el costo de la reposición de la puerta. Se impuso, además, un periodo probatorio de un año dentro del que el Sr. Freyre solo podía entrar a la Cooperativa de lunes a viernes, de 4:00 PM a 8:00 PM, exclusivamente al apartamento de su madre.

67. La Sra. Morales cumplió con la penalidad económica de 500 impuestas y la Cooperativa emitió un pago por la suma de $351.70 a la Sra. Ivia Cruz que fue recibido por ésta.

68. La Sra. Ivia Cruz admite que el dinero que pagó por el daño a la puerta le fue reembolsado.

69. La Sra. Cruz recibió copia de la Resolución emitida por la Junta de Directores el 10 de mayo de 2013.

70. La Administración de la Cooperativa ha emitido comunicados a la Sra. Ivia Cruz sobre incidentes en los que se imputa ha estado envuelto el Sr. Alexander Monje Adorno. Por estos incidentes no se han impuesto multas o penalidades a la Sra. Cruz, ni se ha citado a la socia a vista administrativa. Las comunicaciones fueron en las siguientes fechas:

    a.    8 de febrero de 2011
    b.    28 de marzo de 2012
    c.    1 de junio de 2012
    d.    19 de septiembre de 2012
    e.    26 de octubre de 2012
    f.    8 de marzo de 2013

71. Sobre las alegaciones 128-130 de la Demanda, relacionadas a ruidos excesivos provenientes del apartamento de la Sra. Nelly Díaz y el Sr. Alejandro Torres, apartamento que queda debajo de la residencia de los demandantes, la Sra. Cruz admitió que son los mismos a los que se refirió el Sr. Alejandro Torres en unas cartas remitidas por este "con relación a una construcción que había habido en su propiedad". El Sr. Torres envió una carta a la Administración al respecto, así como la hizo llegar una carta sobre el asunto a la señora Cruz.

72. En atención a la alegación de que cada vez que los demandantes pasaban por Apt. 131, que ubica frente a su residencia, las personas que se encontraban dentro del mismo comenzaban a proferir palabras insultantes y soeces hacia los demandantes, la Sra. Ivia Cruz admitió que no han solicitado la intervención de la Policía.

73. El 6 de junio de 2013 la Administración refirió a la Junta de Directores ciertas quejas presentadas por vecinos, socios y/o empleados de la Cooperativa, sobre ruidos fuertes provenientes de la unidad de vivienda ocupada por los demandantes, fuerte olor a incienso proveniente de la unidad de vivienda e incidentes que se imputaron al Sr. Alexander Monje Adorno.

74. Mediante citaciones fechadas a 15 de agosto de 2013 y 9 de septiembre de 2013, la Junta de Directores citó a la socia Ivia Cruz a vista administrativa.

75. El día 24 de septiembre de 2013 se celebró una vista a la que asistió la socia Ivia Cruz, acompañada de abogado.

76. Mediante *Resolución y Tercera Citación para Vista por Conducta Indebida* del 1 de octubre de 2013, la Junta de Directores concedió la transferencia de la vista solicitada por la representante legal de la socia y se citó a la socia nuevamente a la vista administrativa el 22 de octubre de 2013.

77. La representación legal de la Sra. Cruz presentó una Solicitud de Enmienda a "*Resolución y Tercera Citación para Vista por Conducta Indebida*" y Otros Extremos, con fecha de 19 de octubre de 2013.

78. La moción fue declarada no ha lugar por la Junta de Directores, mediante *Resolución* del 21 de octubre de 2013.

79. Previo a ello, el 16 de octubre de 2013 la Sra. Cruz y el Sr. Monge Adorno habían presentado una *Querella y Solicitud Urgente de Cese y Desista* ante COSSEC, solicitando la paralización del procedimiento administrativo de la Cooperativa y que se ordenara a la Cooperativa a conceder un acomodo razonable al Sr. Alexander Monge Adorno, entre otros asuntos.

80. La *Querella* fue declarada no ha lugar por COSSEC el 1 de octubre de 2014.

81. La parte querellante en el caso presentó una *Solicitud de reconsideración a la desestimación de la Querella* el 22 de octubre de 2014.

82. Mediante *Resolución* del 20 de enero de 2015, COSSEC reiteró su falta de jurisdicción sobre el asunto planteado en la *Querella,* pero ordenó la paralización de los procedimientos en la Cooperativa únicamente en cuanto a los planteamientos levantados por los querellantes sobre la representación legal de la Cooperativa.

83. El 5 de febrero de 2015 la representación legal de la Cooperativa presentó su renuncia, tanto en el caso ante COSSEC como en el procedimiento administrativo ante la Cooperativa.

84. En atención a ello, COSSEC emitió *Resolución* final el 2 de marzo 2015 levantando la paralización del procedimiento administrativo en la Cooperativa.

85. La Sra. Ivia Cruz admitió que no se recurrió en apelación de esa determinación de COSSEC.

86. Al preguntársele en deposición en qué consistía el acomodo solicitado a la Cooperativa, la Sra. Ivia Cruz expresó que consistía en que:

a.    La vecina del apartamento que ubica frente a su residencia cerrara la puerta para que no hubiese ruido que afectara al Sr. Monge Adorno. Testificó la Sra. Ivia Cruz que esta solicitud la hizo verbalmente a la Administración;

b.    Que la Administración los ayudara a evitar confrontaciones entre personas de la Cooperativa y el Sr. Alexander Monge Adorno;

c.    Que los ayudara a resolver la situación de los ruidos del apartamento ubica arriba de su residencia, en el que la residente de nombre Paola camina con tacos. Sobre esta situación, admitió que el Sr. Monge Adorno en ocasiones tomaba "hoy doble medicación que no le correspondía para poder dormir", así somo este se molestaba y le gritaba a ella;

d.　　Que lo empleados de la Cooperativa no caminaran detrás o delante del Sr. Monge Adorno;

e.　　Que los guardias de seguridad y el personal de Administración tuvieran un entrenamiento especial para atender al Sr. Alexander Monge Adorno;

f.　　Que también se educara a los vecinos, el entorno, para manejar la condición médica del Sr. Alexander Monge.

87. La Sra. Ivia Cruz admite que se le ofreció mudar a su familia para la Torre A de la Cooperativa para resolver el problema de los ruidos, pero ella no aceptó.

88. En relación con la solicitud de acomodo razonable, el 11 de septiembre de 2013 la Sra. Nelly Díaz, Administradora, envió una contestación a la Sra. Ivia Cruz Hernández, mediante la que se le solicitó información y documentación necesaria para poder procesar la solicitud.

89. La Sra. Ivia Cruz Hernández contestó esa carta de la Sra. Nelly Díaz, mediante carta dirigida a ésta y a la Junta de Directores, fechada a 19 de septiembre de 2013.

90. La Junta de Directores, mediante carta del 17 de octubre de 2013, expresó a la Sra. Cruz Hernández que su carta del 19 de septiembre de 2013 "no provee la información solicitada por la administradora de la Cooperativa, Sra. Nelly Díaz Adorno, en carta del 11 de septiembre de 2013 y que es indispensable para que la Junta de Directores pueda evaluar una solicitud de acomodo razonable". Igualmente, expresó que se había determinado que la Sra. Cruz Hernández no había presentado la "información necesaria para atender la solicitud de acomodo razonable".

91. Mediante carta del 21 de octubre de 2013 la Lcda. Nydia Irizarry, en representación de la Sra. Ivia Cruz, se dirigió a la Junta de Directores y a la Administración en relación a la solicitud de acomodo razonable para el Sr. Monge Adorno.

92. La Junta de Directores, mediante carta del 10 de marzo de 2014, contestó la comunicación de la Lcda. Irizarry, con copia para el Sr. Alexander Monge.

93. En esta carta del 10 de marzo de 2014, La Junta de Directores expresó que se denegaba la solicitud "por entender que la misma no era razonable ni adecuada".

94. Mediante la carta del 10 de marzo de 2014 la Junta de Directores denegó y cerró la solicitud de acomodo razonable.

95. Luego del 10 de marzo 2014, la Sra. Ivia Cruz Hernández no hizo una petición de acomodo razonable ante agencias administrativas ni tribunales.

96. La Sra. Ivia Cruz Hernández admite que lo que solicitaban como acomodo no era un cambio de unidad de vivienda ni de torre y que eso no le interesaba.

97. La Sra. Ivia Cruz Hernández no recurrió de, ni apeló, esa determinación de HUD.

98. Tampoco el Sr. Alexander Monge Adorno presentó una queja ante HUD sobre el discrimen alegado contra la Cooperativa.

99. El Sr. Alexander Monge Adorno expresó que desde el 2008 su condición de salud emocional le impide "estar al lado de la gente".

100. El Sr. Alexander Monge Adorno no está incapacitado por el Seguro Social.

101. El Sr. Alexander Monge Adorno no ha sido declarado incapaz judicialmente, ni tiene tutor.

102. Según los demandantes, la condición emocional de estrés postraumático y psicosis atípica del Sr. Alexander Monge Adorno surgió desde el año 2003.

103. El Sr. Alexander Monge Adorno estuvo ingresado en el Hospital San Juan Capestrano del 12 al 16 de febrero de 2006.

104. En la hoja de cernimiento para esa hospitalización se anotó que el Sr. Monge Adorno había referido que "del viernes para acá mi mujer no me aguanta. Yo le tiré con una silla al juez y él me humilló al frente de todos y el perjudicado soy yo."

105. El Diagnóstico inicial de dicha hospitalización fue trastorno de estrés postraumático.

106. Entre los eventos precipitantes para esa hospitalización, según referido por el Sr. Monge Adorno, se encuentra un caso legal federal e ideas homicidas contra el juez que atendió ese caso, ansiedad, irritabilidad, llanto frecuente, pobre control de impulsos, falta de concentración, anhedonia, agresividad verbal, pobre autoestima, aislado, escucha que lo llaman a que se mate.

107. El diagnóstico de alta para esa hospitalización fue depresión mayor severa recurrente / episodio postraumático.

108. El 17 de febrero 2006 el Sr. Alexander Monge Adorno fue evaluado ambulatoriamente por el Dr. Padró, quien lo diagnosticó con depresión mayor severa recurrente con rasgos psicóticos y recomendó admisión a hospitalización parcial.

109. El Sr. Monge Adorno fue recluido nuevamente en el Hospital San Juan Capestrano del 23 de febrero de 2006 al 3 de marzo de 2006.

110. Para esa hospitalización, el Sr. Monge Adorno refirió tener historial ambulatorio con el Dr. Padró, quien "me había mandado dos semanas pa' aquí y yo no vine."

111. Refirió, además, que la causa de la hospitalización anterior había sido que "no le gustó lo que dijo o hizo el juez y su instinto fue tirarle a éste con una silla."

112. Para el 2 de marzo de 2006 se anotó que hubo una intervención individual con el Sr. Monge Adorno porque había incitado un incidente en el que se dirigió al baño de caballeros, que se encontraba ocupado por el Dr. Cardona, y comenzó a darle golpes repetidos en la puerta. Al salir del baño el Dr. Cardona, le llamó la atención. El Sr. Monge Adorno se volteó y comenzó a comentar por los pasillos que el Dr. Cardona le había faltado el respeto alterando a los pacientes.

113. Sobre el mismo incidente con el Dr. Cardona, el 3 de marzo de 2006 se anotó en la Nota Especial de Coordinadora que el Sr. Monge Adorno había solicitado el alta porque no le había gustado la forma en que el Dr. Cardona le llamó la atención. ¿Refirió que el Dr. Cardona no puso un letrero en la puerta de que se iba a tardar, "él es hombre, "se está maquillando?". Se anotó que se le aclaró que lo que estaba solicitando no era razonable y que la conducta presentada era la misma que en otras ocasiones había presentado y le había traído problemas.

114. En la nota de seguimiento para el 3 de marzo de 2006 se anotó que el Sr. Monge Adorno hoy había exhibido un patrón de comportamiento egocéntrico, grandioso y sin empatía por los demás que aparenta estar relacionado a su estado de ánimo, así como que debía explorar en tratamiento el patrón de personalidad y actitud hostil.

115. Para esa hospitalización, el Sr. Monge Adorno hoy fue dado de alta en contra de la recomendación médica, con diagnóstico de trastorno de ánimo no especificado y trastorno de personalidad.

116. La Sra. Ivia Cruz admitió en deposición que las políticas de acomodo razonable de la Cooperativa le fueron entregadas.

117. La Sra. Ivia Cruz admitió en deposición que la última comunicación que envió a la Administración relacionada con los incidentes en los que encontró aceite y sal frente a la puerta de su residencia fue el 19 de agosto de 2013.

118. La Sra. Ivia Cruz admitió en deposición que la última ocasión en que se querelló con los guardias de seguridad de la Cooperativa por los incidentes de aceite y sal fue el 6 de agosto de 2013. O sea, más de dos años antes de la radicación de la Demanda.

119. La Sra. Ivia Cruz admitió que no vio a ninguno de los codemandados miembros de la Junta de Directores echarle aceite o sal, así como tampoco pudo referir

ningún incidente al respecto en el que hubiesen estado envueltos los codemandados comparecientes.

120. En relación al párrafo 37 de la Demanda, en el que alega contra los codemandados comparecientes que han avalado, por acción u omisión, un trato contra los demandantes por parte de la Administradora, Nelly Díaz Adorno que ha sido desigual, discriminatorio, amiguismo, abuso de poder, de facultades y prerrogativas, violaciones reiteradas al deber fiduciario y violaciones intencionales a la Ley 239-2004, la Sra. Cruz ha admitido que: a) a lo que se refería era al deber fiduciario de éstos como miembros de la Junta de Directores; y b) las omisiones consistieron en las comunicaciones de ella "sobre las situaciones por las que estaba pasando y ellos no hicieron absolutamente nada".

121. La Sra. Ivia Cruz presentó una querella contra la Administradora, Nelly Díaz, mediante carta del 23 de agosto de 2013 dirigida al Sr. Iván Otero, como Presidente de la Junta de Directores en ese momento.

122. Dicha querella fue atendida por la Junta de Directores, mediante carta del 17 de octubre de 2013. En esa carta se informó a la Sra. Cruz Hernández que se había atendido su querella contra la Sra. Nelly Díaz y que, en reunión ordinaria del 16 de octubre de 2013, se había determinado que las imputaciones contra la Administradora no se sostenían.

123. Además, la Junta de Directores, mediante carta del 10 de marzo de 2014, contestó la comunicación de la Lcda. Irizarry, con copia a la Sra. Ivia Cruz Hernández. En esta carta expresó nuevamente que, la querella presentada contra la Administración ya había sido atendida y que se había determinado que no existían los elementos para que la Junta de Directores tomara medidas correctivas o disciplinarias contra la Sra. Nelly Díaz.

124. Las notas de los demandantes Alexandra, Gabriela y Alexander Monge Cruz no se vieron afectadas por los hechos que alegan en la Demanda.

125. Los demandantes Ivia Cruz y Alexandra, Gabriela, Alexander Monge Cruz no han sido referidos ni han recibido atención por profesionales de salud mental por los hechos que alegan en la Demanda.

126. A los demandantes Ivia Cruz y Alexandra, Gabriela, Alexander Monge Cruz no se les han ordenado ni han ingerido medicamentos para su salud mental.

El foro primario desestimó con perjuicio la demanda contra la Cooperativa de Vivienda Ciudad Universitaria, los miembros de la Junta de Directores y su administradora, la Sra. Carmen Nelly Díaz. La sentencia concluyó que, por no existir controversia sustancial de

hechos, la mayoría de las alegaciones estaban prescritas, además, que no habían agotado los remedios administrativos, no lograron probar daños y tampoco hubo discrimen en su contra.

En desacuerdo con la decisión, los apelantes presentaron una moción en reconsideración.[9] Evaluada la moción y los argumentos en oposición, el TPI denegó la moción.[10]

Inconforme con la determinación, los apelantes presentaron este recurso en el que alegan que el TPI cometió los siguientes señalamientos de error:

> Erró el Tribunal de Primera Instancia al determinar que el emplazamiento del codemandado Alejandro Torres no fue diligenciado adecuadamente pues para ello debía dirimir credibilidad, asunto que <u>requería</u> la celebración de una vista evidenciaria.
>
> Erró el Tribunal de Primera Instancia al determinar que las causas de acción estaban prescritas.
>
> Erró el Tribunal de Primera Instancia al desestimar las causas de acción de los menores a pesar de haber prueba incontrovertible de daños que requería ser dirimida en un juicio plenario.
>
> Erró el Tribunal de Primera Instancia al desestimar las reclamaciones de los codemandados individuales en su carácter personal.

## II

### A.

La Regla 36.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.2, permite a una parte, contra la cual se ha presentado una reclamación, solicitar que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. *Ramos Pérez v. Univisión*, 178 DPR 200, 212-214 (2010). El propósito de este mecanismo es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *González Santiago v. Baxter Healthcare of PR*, 202

---

[9] *Íd.*, págs. 209-216.
[10] *Íd.*, pág. 252.

DPR 281, 290, 291 (2019); *Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 555 (2011); *Ramos Pérez v. Univisión*, supra, pág. 212-214.

La parte promovente de una solicitud de sentencia sumaria deberá demostrar que, a la luz del derecho sustantivo, amerita que se dicte sentencia a su favor. *León Torres v. Rivera Lebrón*, 204 DPR 20 (2020). *Ramos Pérez v. Univisión*, supra, pág. 213; *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 184 (2005).

La parte que se oponga a que se dicte sentencia sumaria debe controvertir la prueba presentada. La oposición debe exponer de forma detallada y específica, los hechos pertinentes para demostrar que existe una controversia fáctica material; de lo contrario, se dictará la sentencia sumaria en su contra, si procede en derecho. 32 LPRA Ap. V, R. 36 (c). Cuando la moción de sentencia sumaria está sustentada con declaraciones juradas u otra prueba, la parte opositora no puede descansar en meras alegaciones y debe proveer evidencia para demostrar la existencia de una controversia en torno a un hecho material. *Oriental Bank v. Perapi et al*, 192 DPR 7, 25 (2014).

**B.**

El emplazamiento es el mecanismo procesal mediante el cual el tribunal adquiere jurisdicción sobre el demandado. *Martajeva v. Ferré Morris*, 2022 TSPR 123 (2022), 210 DPR 612; *Rivera Torres v. Díaz López*, 207 DPR 636, 646-647 (2021). Su propósito principal es notificar a la parte demandada que existe una acción judicial en su contra. De esta manera, la parte puede comparecer en el procedimiento, ser oído y presentar prueba a su favor. De esta manera, la parte puede comparecer en el procedimiento, ser oído y presentar prueba a su favor. *Íd.*

Por consiguiente, no es hasta que se diligencia el emplazamiento y se adquiere jurisdicción, que la persona puede ser considerada propiamente parte; aunque haya sido nombrada en el

epígrafe de la demanda, hasta ese momento, sólo es parte nominal. Véanse: *Sánchez Rivera v. Malavé Rivera*, 192 DPR 854 (2015); *Medina v. Medina*, 161 DPR 806 (2004); *Acosta v. ABC, Inc.*, 142 DPR 927 (1997).

En nuestro ordenamiento jurídico, la figura del emplazamiento está regulada por la Regla 4 de las de Procedimiento Civil, 32 LPRA Ap. V. En particular, dicho precepto legal dispone que una parte que interese demandar a otra deberá presentar el formulario de emplazamiento conjuntamente con la demanda para que el Secretario o Secretaria del Tribunal lo expida inmediatamente. Regla 4.1 de las de Procedimiento Civil, 32 LPRA Ap. V. Una vez expedido el emplazamiento, la parte que lo solicita tiene 120 días para poder diligenciarlo. Pasado el término de 120 días y éste no se diligencie, el tribunal deberá dictar sentencia en la que decrete su desestimación y archivo sin perjuicio del caso ante su consideración. *Íd. Martajeva v. Ferre Morris*, supra; *Torres Zayas v. Montano Gómez*, 199 DPR 458, 467-468 (2017).

Las dos maneras para diligenciar un emplazamiento son de forma personal o mediante edicto. *Sánchez Ruiz v. Higuera Pérez*, 203 DPR 982, 987 (2020). El emplazamiento personal es el método idóneo para adquirir jurisdicción. No obstante, mediante excepción y en circunstancias específicas, nuestras Reglas de Procedimiento Civil permiten que se utilice el mecanismo del emplazamiento por edicto. Regla 4.6(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 4.6(a). *Caribbean Orthopedics v. Medshape et al,* 207 DPR 994, 1005 (2021).

Nuestro Tribunal Supremo ha expresado que los requisitos que dispone la regla de emplazamiento son de estricto cumplimiento. Véanse: *Rivera Torres v. Díaz López*, supra, pág. 647; *Quiñones Román v. Cía. ABC*, 152 DPR 367, 374-375 (2000). La falta de un correcto emplazamiento a la parte contra la cual un Tribunal dicta sentencia, "produce la nulidad de la sentencia dictada por falta de jurisdicción

sobre el demandado [...]". *Lanzo Llanos v. Banco de la Vivienda*, 133 DPR 507, 512 (1993). Véase, además: *Rivera Torres v. Díaz López,* supra, págs. 647-648. Dicho de otro modo, "[t]oda sentencia dictada contra un demandado que no ha sido emplazado o notificado conforme a derecho es inválida y no puede ser ejecutada. Se trata de un caso de nulidad radical por imperativo constitucional". (Citas omitidas). *Torres Zayas v. Montano Gómez, et als.,* supra, págs. 468-469.

Sin embargo, el derecho al emplazamiento es renunciable. La renuncia puede suceder cuando la parte demandada se somete voluntariamente a la jurisdicción del tribunal. *Sánchez Rivera v. Malavé Rivera*, supra, págs. 872-873. "La sumisión voluntaria suple la omisión del emplazamiento, ya que tiene el efecto de que el tribunal adquiera jurisdicción sobre la persona. Una parte puede someterse al tribunal de forma explícita o implícita. La sumisión voluntaria puede suceder cuando comparece voluntariamente y realiza algún acto sustancial que la constituya parte en el pleito". *Íd.*

En cuanto a la sumisión voluntaria, el Alto Foro ha expresado también que esto se "puede hacer al cumplir voluntariamente con las órdenes del tribunal y, a solicitud de éste, presentar documentos pertinentes dirigidos a dilucidar la reclamación incoada por la parte demandante en su contra". *Vázquez v. López*, 160 DPR 714, 721 (2003).

### C.

La responsabilidad civil por daños extracontractuales surge del Art. 1802 del Código Civil, 31 LPRA ant. sec. 5141, en el que se establece que "el que por acción u omisión causa daño a otro interviniendo culpa o negligencia, está obligado a reparar el daño causado". La responsabilidad que emana de dicho artículo es el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido que sea suficiente para compensar el interés del perjudicado.

*SLG García Villega v. ELA,* 190 DPR 799, 808 (2014). El texto del Artículo 1802, *supra,* hace claro que para que prospere una acción por daños y perjuicios a su amparo es necesario que se demuestre la ocurrencia de una acción u omisión culposa o negligente que ocasione un daño y la existencia del nexo causal entre ambos. *Colón Santos v. Coop. Seg. Mult. P.R.,* 173 DPR 170, 177 (2008).

La causa de acción que provee el Art. 1802 del Código Civil, *supra,* para exigir la reparación de un daño extracontractual causado por culpa o negligencia tiene un término prescriptivo de un año. Art. 1868 del Código Civil, 31 LPRA ant. sec. 5298. Este término comenzará a transcurrir una vez el perjudicado conoció o debió conocer que sufrió un daño, quién se lo causó y los elementos necesarios para ejercitar efectivamente su causa de acción. *Maldonado Rivera v. Suárez y Otros,* 195 DPR 182, 193-194 (2016). No obstante, si el desconocimiento se debe a falta de diligencia, no son aplicables las consideraciones sobre la prescripción. *COSSEC et al v. González López et al,* 179 DPR 793, 806-807 (2010).

Ahora bien, "contrario a lo que sucede con los adultos, los derechos y las causas de acciones de los menores no se extinguen por el paso natural del término prescriptivo establecido por ley." *Rivera Serrano v. Mun. De Guaynabo,* 191 DPR 679, 689–690 (2014). Esta norma surge del Artículo 40 del Código de Enjuiciamiento Civil, el cual dispone, en lo pertinente que, "si la persona con derecho a ejercitar una acción es, al tiempo de nacer la causa de la acción, un menor de edad, el tiempo que dure tal incapacidad no se considerará parte del tiempo fijado para empezar a ejercitar la acción." *Íd.,* pág. 690. Lo anterior quiere decir que: "[l]a prescripción se suspende durante todo el período de incapacidad del menor." *De Jesús v. Chardón,* 116 DPR 238, 253 (1985).

**D.**

La Ley 239-2004, según enmendada, mejor conocida como la "Ley General de Sociedades Cooperativas de Puerto Rico de 2004", 5 LPRA sec. 4381 *et seq.*, fue promulgada con el propósito de facilitar el manejo adecuado de las cooperativas en Puerto Rico. Su exposición de motivos define el cooperativismo como "un sistema socioeconómico que busca la liberación, y facilita el perfeccionamiento integral del ser humano, mediante la justicia económica y la cooperación social." Asimismo, señala que, las cooperativas de vivienda son aquellas "que se dedican a la administración, compra, construcción, venta, alquiler y a cualquier otra actividad relacionada con la vivienda y la convivencia comunitaria." 5 LPRA sec. 4580.

Según dispuesto en la referida ley, son los socios de la cooperativa quienes ejercen el poder de decisión. Un socio es "toda persona que sea admitida como miembro de una cooperativa de conformidad con esta Ley y el reglamento general de dicha cooperativa [...]" 5 LPRA sec. 4381. En el caso de las cooperativas de vivienda, "los derechos y deberes del socio aplican solamente a las personas naturales mayores de edad que integran la misma familia y que residan en la misma unidad de vivienda." 5 LPRA sec. 4581. Estos socios deberán aprobar un reglamento interno que contenga cláusulas de incorporación y toda disposición que entiendan conveniente para el mejor funcionamiento de la cooperativa. 5 LPRA sec. 4404. El reglamento interno deberá contener, entre otras cosas:

> [...]
>
> h. la condición de socio, los requisitos precedentes a la condición de socio; la forma de determinar y de pagar al socio su interés en la cooperativa al ocurrir su muerte, retiro, separación u otra circunstancia que le haga cesar en su condición de socio; las condiciones y fechas en que cualquier miembro dejará de serlo; la forma y efecto de la suspensión y expulsión de un socio;
>
> [...]

m. las penalidades por infracciones al reglamento interno y el procedimiento para radicar querellas; y

n. normas de convivencia social sobre integración cooperativa. *Íd.*

Las cooperativas de vivienda tienen la obligación de informarle a todo aquel candidato a ser socio sobre los reglamentos, condiciones, responsabilidades y derechos adquiridos una vez adviene socio, incluyendo las causas y condiciones para perder su calidad de socio. 5 LPRA sec. 4581. El Artículo 9 de la referida ley dispone que un socio podrá ser separado o privado de sus derechos cuando muera, renuncie, sea expulsado o la cooperativa sea disuelta. 5 LPRA sec. 4441. El Artículo 9.4 dispone que la Junta de Directores podrá separar o expulsar a un socio cuando, entre otras cosas, haya realizado actos impropios que perjudiquen a la cooperativa o haya incurrido en cualquier falta considerada por el reglamento como causa de separación. 5 LPRA sec. 4445. En cuanto al procedimiento de separación ante la Junta, la Ley 239-2004 dispone:

> Cuando la Junta determine que procede una acción para separar un socio, deberá notificar por correo certificado al socio afectado, especificando las causas para ello. La notificación lo citará a comparecer ante la Junta, que celebrará una vista administrativa dentro de un término no menor de diez (10) días ni mayor de treinta (30) días desde el recibo de la notificación.

> El socio afectado podrá asistir a la vista acompañado de abogado, y tendrá derecho a examinar la prueba presentada en su contra, a contrainterrogar testigos y a ofrecer prueba en su favor. La Junta evaluará la prueba presentada y emitirá su decisión dentro del plazo de quince (15) días a partir de la vista administrativa y notificará a la parte afectada por correo certificado dentro de cinco (5) días siguientes a la fecha que se emita la decisión. Toda decisión de la Junta separando a un socio de una cooperativa será efectiva desde la fecha de notificación al socio afectado. En cuanto a las cooperativas de vivienda se aplicará lo dispuesto en los Artículos 35.4 al 35.8 de esta Ley. 5 LPRA sec. 4446.

Si la Junta de Directores entiende que un socio incurrió en conducta indebida, según dispuesto en el Artículo 35.4 de la Ley, 5 LPRA sec. 4584, podrá citar al socio a una vista. Posteriormente, la Junta de Directores podrá hacer una de varias determinaciones,

incluyendo separar al socio y privarlo de sus derechos. 5 LPRA sec. 4585. Para ello, será necesario seguir el siguiente procedimiento:

[…]

a. La Junta deberá concederle al socio la oportunidad previa de ser escuchado en vista celebrada ante ellos, previa notificación realizada por los menos diez (10) días antes de la vista. La notificación se efectuará personalmente o por correo certificado a la última dirección conocida del socio.

b. La notificación deberá incluir la fecha, sitio y hora de la vista, una declaración de la autoridad legal para celebrar la vista, y una declaración corta de las alegaciones en contra del socio.

c. La vista se llevará a cabo de forma sencilla e informal, sin necesidad de cumplir estrictamente con el procedimiento procesal y evidenciario establecido para el sistema adjudicativo, administrativo y judicial.

d. El socio podrá ir representado o asistido por un abogado.

e. Si el socio no compareciere a la vista y no justifica su ausencia, la Junta podrá proceder a separarlo como socio, privándole en su totalidad de los derechos que tenga como tal y concederle un término de treinta (30) días para que desaloje la unidad. 5 LPRA sec. 4586.

El Artículo 35.8 de la Ley dispone que todo aquel perjudicado por una determinación final de la Junta de Directores podrá, luego de agotar los recursos ante dicho cuerpo, acudir ante el TPI en revisión judicial. Ello podrá hacerlo dentro de los treinta (30) días de habérsele notificado la determinación final de la Junta mediante correo certificado. Sin embargo, la decisión impugnada se mantendrá en vigor, excepto si el Tribunal ordenara la suspensión de la misma, mediante justa causa, mientras se dilucida el recurso. 5 LPRA sec. 4588.

**III**

A la luz de la norma antes expuesta, nos corresponde determinar si erró el TPI al desestimar la demanda, debido a que la mayoría de las causas de acción estaban prescritas y tampoco lograron probar los daños.

**A.**

En el primer señalamiento de error, los apelantes alegan que el TPI erró al no celebrar una vista evidenciaria, puesto que había un factor de credibilidad. Alegan que el emplazamiento dirigido al señor Torres le fue entregado a su esposa, quien le manifestó que tenía autoridad para recibir el emplazamiento de su esposo. Por lo tanto, aducen que al haber dos versiones encontradas sobre lo que ocurrió, el TPI no podía disponer de la controversia ni pasar juicio sobre la declaración jurada del emplazador, sin celebrar una vista en la que dilucidara la credibilidad del emplazador y la señora Díaz.

Por su parte, el señor Torres manifiesta que, de asumir que la versión del emplazador es correcta, de todas formas, la señora Díaz no estaba autorizada a recibir la demanda y su emplazamiento, ya que el emplazador omitió indicar que le había exigido a la esposa prueba documental que indicara que estaba autorizada. En cuanto al factor de credibilidad, sostiene que quien adoleció de ausencia de credibilidad fue el emplazador, ya que hay afirmaciones contradictorias que realizó bajo juramento.

Nuestro ordenamiento jurídico establece que, uno de los fundamentos para solicitar la desestimación de la demanda es cuando hay falta de jurisdicción sobre la persona. Regla 10.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2. Por lo tanto, para adquirir jurisdicción sobre la persona es necesario que sea emplazada. *Cirino v. Administración de Corrección*, 190 DPR 14, 30 (2014). Cuando se diligencia el emplazamiento a una persona mayor de edad, se le emplaza entregándole copia de la demanda y del emplazamiento, o a un agente autorizado. No obstante, el emplazador deberá exigir prueba documental de la autoridad conferida al agente autorizado. R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, San Juan, Lexis Nexis de Puerto Rico, 2017, pág. 263.

A tenor con lo anterior, determinamos que el emplazamiento no le fue entregado al señor Torres, ni a una persona autorizada para recibirlo, tal como dispone la Regla 4.4(a) de Procedimiento Civil, 32 LPRA Ap. V, R. 4.4. A su vez, éste no renunció a su derecho de ser emplazado y tampoco optó por someterse voluntariamente a la jurisdicción del Tribunal. Todo lo contrario, el señor Torres oportunamente argumentó ante el TPI, de manera reiterada, que no fue emplazado en su capacidad personal. Por consiguiente, al emplazador indicar que, primero lo había dirigido personalmente, y luego señalar que, había sido entregado a su esposa, se contradijo, por lo que incumplió con las exigencias de la ley. Así las cosas, nunca se emplazó ni se obtuvo jurisdicción sobre la persona del señor Torres.

**B.**

En cuanto al segundo señalamiento de error, los apelantes disponen que erró el foro primario al determinar que las causas de acción estaban prescritas.

La prescripción es una institución de derecho sustantivo que extingue un derecho por el mero lapso del tiempo fijado por la ley o la inercia de una parte en incoar su causa de acción. J. Puig Brutau, *Caducidad, prescripción extintiva y usucapión*, 3ra ed., Barcelona, Ed. Bosch, 1996, pág. 32. En lo pertinente a las reclamaciones extracontractuales, el Art. 1868 del Código Civil establece un término prescriptivo de un (1) año, el cual comienza a correr, no sólo cuando el perjudicado conoció el daño o razonablemente debió conocerlo, sino desde que conoció quién fue su autor y los elementos necesarios para poder ejercitar su causa de acción efectivamente. 31 LPRA ant. sec. 5298; *Sucn. Maldonado v. Sucn. Maldonado*, supra, pág. 194.

La prescripción se puede interrumpir por el "[e]jercicio de la acción ante los tribunales, por reclamación extrajudicial del acreedor

y por cualquier acto de reconocimiento de la deuda del deudor. Art. 1873 del Código Civil, 31 LPRA ant. sec. 5303.

Según reseñamos, los hechos alegados en la *Demanda* instada por los apelantes el 24 de junio de 2016, incluye causas de acción sobre alegados hechos ocurridos desde el 2008 cuando presentaron una querella ante la Administradora de la Cooperativa, la señora Díaz, por ruidos excesivos provenientes del apartamento de la Sra. Marisol Morales. A su vez, sostuvieron que continuaron los ruidos innecesarios y excesivos, afectando la condición de salud del señor Monge. Como consecuencia, le solicitaron a la Junta de Directores que atendieran sus reclamos, sin embargo, alegaron que estos nunca fueron atendidos y, al contrario, que recibieron una querella por la alegada conducta indebida del señor Monge hacia la señora Díaz.

Los apelados, por su parte, manifiestan que los reclamos de los apelantes fueron atendidos. Sobre el incidente con el hijo de la señora Morales, el cual surgió entre el 2012-2013, la Junta de Directores emitió una *Resolución* mediante la cual le impusieron una sanción económica y una probatoria. En cuanto a la solicitud de acomodo razonable para el señor Monge, manifiestan que le ofrecieron mudarse de unidad, lo cual la señora Cruz rechazó, a su vez, fue evaluado y posteriormente denegado, no obstante, tampoco recibieron una nueva solicitud.

Sobre los ruidos provenientes del apartamento del señor Torres y la señora Cruz, los apelantes expresaron que, para el 2013, habían enviado cartas a la Junta de Directores y a la Administradora, sin embargo, no presentaron una querella sobre dichos ruidos. Además, tampoco pudieron identificar que fueran éstos quienes generaron los alegados ruidos.

Finalmente, la acción disciplinaria contra los apelantes aún está pendiente ante la Junta de Directores, y según dispone el Artículo 35.8 de la Ley 239-2004, *supra*, todo aquel perjudicado por

una determinación final de la Junta de Directores podrá, luego de agotar los recursos ante dicho cuerpo, acudir ante el TPI en revisión judicial.

En vista de lo anterior, coincidimos con lo resuelto por el foro apelado, a los efectos de que la mayoría de las alegaciones estaban prescritas. Los apelantes, para poder presentar una causa de acción contra los apelados, tenían hasta el 24 de junio de 2015, y cabe destacar que, no surge del expediente que los apelantes hayan interrumpido, de forma alguna, el término prescriptivo de un año. A su vez, la señora Cruz admitió que no había hecho una reclamación extrajudicial por los daños a los apelados. Por lo que, determinamos que el tribunal *a quo* no incidió en su dictamen.

## C.

En su tercer señalamiento de error, los apelantes aducen que incidió el TPI al desestimar las causas de acción de los menores. De conformidad con el Artículo 40 del Código de Enjuiciamiento Civil, *supra,* la prescripción contra los menores se suspende por el periodo que dure la minoridad.

Según las constancias del expediente, los hechos que dieron paso a la demanda ocurrieron cuando los hijos de los apelantes eran menores de edad. Sin embargo, no fue hasta el 24 de junio de 2016 que presentaron la demanda, y para esa fecha, Alexander Monge Cruz tenía 24 años, Alexandra Monge Cruz tenía 21 años, y Gabriela Monge Cruz tenía 16 años.

Ahora bien, Alexander Monge Cruz advino en mayoría de edad al menos 3 años antes de la radicación de la demanda, y según el expediente, éste no interrumpió el término de 1 año, por lo que, de igual forma prescribieron las causas de acción. En cuanto a las hijas de los apelantes, Alexandra y Gabriela, al momento de presentarse la demanda eran menores y conforme a la disposición legal antes citada, las acciones de los menores quedan suspendidas mientras dure ese

estado de minoría. Sin embargo, éstas sostuvieron que los alegados daños que recibieron, y por los cuales acudieron a terapia familiar, fueron causados por otras personas, las cuales no fueron incluidas en la demanda de epígrafe. Además, cabe señalar, que durante el tiempo en que ocurrieron los alegados incidentes, mantuvieron un buen promedio en sus notas, no recibieron tratamiento médico prolongado, ni fueron medicadas.

Por consiguiente, del presente recurso no surge que el foro primario haya abusado de su discreción al determinar que los apelantes no lograron probar los daños de los hijos.

Finalmente, es inmeritorio pasar juicio sobre el cuarto señalamiento de error, puesto que no proceden las alegaciones en el carácter personal de los apelados, ya que se determinó que las causas de acción están prescritas contra estos.

**IV**

Por los fundamentos antes expuestos se confirma la *Sentencia* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones